IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANDRA REGISTER, GRACE B. MERCHANT, and SUSAN L. WILSON, on behalf of themselves and all others similarly situated, | CIVIL ACTION <br><br> NO. _____ |
| Plaintiffs, | |
| v. | CLASS ACTION |
| PNC FINANCIAL SERVICES GROUP, INC., PNC BANK, N.A., PENSION COMMITTEE OF PNC FINANCIAL SERVICES GROUP, INC. PENSION PLAN and PNC FINANCIAL SERVICES GROUP, INC. PENSION PLAN, | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

Plaintiffs Sandra Register ("Register"), Grace B. Merchant ("Merchant") and Susan L. Wilson ("Wilson") (collectively referred to herein as "Plaintiffs"), by and through their counsel, allege as follows:

## STATEMENT OF FACTS

1. Plaintiffs bring this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.

2. Plaintiffs and the Class are current and former employee-participants in and beneficiaries of the PNC Financial Services Group, Inc. Pension Plan, which is a defined benefit pension plan under ERISA (the "Plan").

3. The Plan prior to January 1, 1999 (the "Former Plan") offered participants an annuity at retirement under a benefit formula based on years of credited service with the

company, times a percentage of compensation during a specified base averaging period (the "Old Formula").

4.  Effective January 1, 1999 (the "Date of Conversion"), Defendants changed the benefit formula to one referred to and commonly known as a "Cash Balance" formula (the "Cash Balance Formula"). Under this new Cash Balance Formula, benefits that had accrued under the Former Plan were restated in the form of opening hypothetical bookkeeping account balances in the converted Plan (the "Cash Balance Plan").

5.  Under ERISA, for each year of qualifying service, a defined benefit pension plan must provide for a definitely determinable, non forfeitable "accrued benefit." This accrued benefit must be expressed in the form of an annual benefit commencing at "normal retirement age." The interest credits that are projected to the Plan's normal retirement age of 65 and valued as an age 65 annuity must be taken into account in determining whether a cash balance formula complies with ERISA's benefit accrual requirements.

6.  Under the Cash Balance Formula, on the Date of Conversion Defendants created for each participant a hypothetical cash balance account with an initial balance. The initial account balances were far less than the full actuarial value of the retirement benefits Plaintiffs and the Class had already accrued on the Date of Conversion. Defendants failed to disclose this fact to Plaintiffs and the Class.

7.  In order to determine the initial cash balance account balance (and subsequent balances) Defendants nominally credited the hypothetical cash balance account of each participant with benefits that were calculated using two components.

8.  The first component is a percentage of salary referred to as the "earnings credit."

This credit is stated as a percentage of compensation, and the applicable percentage of compensation is determined based on points allocated for combined age and complete years of credited service. The Cash Balance Plan also provides an additional credit (called a "transitional earnings credit") to participants who were age 40 or above with at least 10 years of service as of the Date of Conversion.

9. The second component is interest on the hypothetical account balance referred to as "interest credit." The interest credit is determined using an annual interest rate that is based on the 30-year Treasury rate. The interest credit used to determine the accrued benefit is based on future interest credits through the participant's normal retirement date (*i.e.* age 65). As such, with each passing year, the interest credits decrease as participants move closer to the normal retirement date. This results in the annual reduction of benefit accruals based solely on age in violation of Section 204(b)(1)(H) of ERISA. For example, at age 50, Plaintiffs would accrue benefits under the Cash Balance Plan at a rate of 1.88% (Plaintiff Register), 1.50% (Plaintiff Wilson), and .95% (Plaintiff Merchant), while at age 65 the rate of accrual would drop to .71% for each of them. Each member of the Class has suffered from this same reduction of benefit accruals based solely on age.

10. Under the Cash Balance Formula, when a participant's employment with PNC ends, he or she may withdraw his or her account balance as a lump sum, convert the account balance into an immediate life annuity, or defer the receipt of a lump sum payment or a life annuity until a later date.

11. Paying a lump sum requires determining the actuarial present value of the life annuity payable to a particular participant. The actuarial present value is determined by using an

interest rate to discount for the time value of money, and a mortality table to estimate the probability that the participant will receive the annuity – the pension payment – each month from the annuity starting date for life.

12.     In determining each participant's initial account balance under the Cash Balance Formula, Defendants failed to consider, value and include the early retirement benefit provided for under the Old Formula.  Further, depending on the age/service characteristics of participants, Defendants have not fully included the value of this early retirement subsidies in determining cash balance account balances or payout amounts under the Plan.  While the Old Formula provided an early retirement benefit to those age 50 and higher using a commensurate benefit commencement date, under the Cash Balance Formula Defendants determined the initial account balance, subsequent account balances, and payout amounts by assuming a benefit commencement date ranging only from age 62 to 65.  For example, Plaintiffs' accrued benefits under the Former Plan on the date of conversion compared to their initial cash balance account balances were $16,031/$10,575.29 (Plaintiff Register); $16,694/$12,325 (Plaintiff Wilson); and $8,875/$5,806.06 (Plaintiff Merchant) respectively.  In sum, each Plaintiff, like the other members of the Class, suffered a significant reduction in their accrued benefit as a result of the conversion into the Cash Balance Plan.  This reduction continued to persist and grow after the Date of Conversion, and continues for those still participating in the Plan.

13.     Defendants never communicated to Plaintiffs and the Class the Cash Balance Formula's failure to include the early retirement subsidy in the cash balance initial account balance, subsequent account balances, and payout amounts.  Instead, Defendants continually reassured participants that the benefits under the Old Formula and the Cash Balance Formula

4

were comparable and that their accrued benefits were not being reduced.

14. Plaintiffs did not exhaust the administrative remedies provided under the terms of the Plan prior to initiating this lawsuit because their claims are based on statutory violations of ERISA, and also because exhaustion would have been futile.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), which provides for jurisdiction of actions brought under Subchapter I of ERISA.

16. This Court has personal jurisdiction over the Defendants because they reside in, do business in, and/or have significant contacts with, this District. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

17. Venue is proper here, under ERISA §502(e), 29 U.S.C. § 1132(e), because among other things, this is a District in which Defendants reside or may be found.

## THE PARTIES

18. Plaintiff Sandra Register ("Register") is a resident of Loveland, Ohio. Ms. Register was employed by PNC for over thirteen years, and participated in the Former Plan as well as the Cash Balance Plan. Her last position with the company was as an Administrative Assistant in the PNC Trust Department. On the Date of Conversion, when Defendants converted the Former Plan into the Cash Balance Plan, Ms. Register, who was then 47 years of age, was credited by Defendants with 12 years and 5 months of service and an average final pay of $18,533.27. Using this information, the company determined that her Cash Balance Plan initial

account balance on the Date of Conversion totaled $10,575.29. On July 15, 1999 Ms. Register ended her service with PNC. On November 18, 1999 Ms. Register elected to take a single lump sum payout of $12,100.00, which was her total account balance at that time under the Cash Balance Plan.

19.     Plaintiff Grace B. Merchant ("Merchant") is a resident of Cincinnati, Ohio. Ms. Merchant was employed by PNC for over seven years, and participated in the Former Plan as well as the Cash Balance Plan. Her last position with the company was as an Administrative Assistant in the PNC Private Banking Department. On the Date of Conversion, Ms. Merchant, who was then 49 years of age, was credited by Defendants with four years and two months of service and an average final pay of $25,420.00. Using this information, the company determined that her Cash Balance Plan account balance on the Date of Conversion totaled $5,806.06. On January 4, 2002 Ms. Merchant ended her service for PNC. Her account balance as of March 31, 2002 was $12,468.91. Ms. Merchant continues to participate in the Cash Balance Plan.

20.     Plaintiff Susan L. Wilson ("Wilson") is a resident of Cincinnati, Ohio. Ms. Wilson was employed by PNC for almost fourteen years, and participated in the Former Plan as well as the Cash Balance Plan. Her last position with the company was as a Trust Associate in the PNC Trust Department. On the Date of Conversion, Ms. Wilson, who was then 40 years of age, had almost fourteen years of credited service with PNC and an average final pay of approximately $30,000.00. On June 26, 1999 Ms. Wilson ended her service for PNC. On November 1, 1999, Ms. Wilson elected to take a single lump sum payout of $14,591.32, which was her total account balance at that time under the Cash Balance Plan.

21.     Defendant PNC Financial Services Group, Inc., formerly known as PNC Bank

Corp., and formerly known as PNC Financial Corp. ("PNC" and/or the "Company"), is a Delaware Corporation with its principal place of business at One PNC Plaza, Fifth Avenue and Wood Street, Pittsburgh, Pennsylvania 15265. PNC describes itself as one of the nation's largest financial services companies with assets of over $77 billion. PNC has a diversified business mix, which includes a primary five-state regional banking franchise, specialized financial businesses targeted to companies and government entities, and leading asset management and processing businesses. Defendant PNC is an "employer" and "plan sponsor" within the meaning of ERISA. ERISA §§ 3(5) and 3(16)(B), 29 U.S.C. §§ 1002(5) and 1002(16)(B).

22.     Defendant PNC Bank, N.A., formerly know as, Pittsburgh National Bank, ("the Trustee") is the Trustee for the PNC Financial Services Group, Inc., Pension Plan and maintains its principal place of business at One PNC Plaza, Fifth Avenue and Wood Street, Pittsburgh, Pennsylvania 15265.

23.     Defendant Pension Committee of PNC Financial Services Group, Inc. Pension Plan ("the Pension Committee") is the Administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. §§ 1002(16)(A), and maintains its principal place of business at One PNC Plaza, Fifth Avenue and Wood Street, Pittsburgh, Pennsylvania 15265. The Pension Committee is responsible for all decisions regarding the Plan and its benefits.

24.     Defendant PNC Financial Services Group, Inc. Pension Plan is an "employee benefit plan," an "employee pension benefit plan," and a "defined benefit plan" within the meaning of ERISA §§ 3(3), 3(2)(A), and 3(35), 29 U.S.C. §§ 1002(3), 1002(2)(A), and 1002(35). The Plan is sued here only so that the Court may award complete relief in the event of judgment for the Plaintiffs.

## CLASS ACTION ALLEGATIONS

25. Plaintiffs bring suit on behalf of themselves and all others who are current or former employee-participants in and beneficiaries of the PNC Financial Services Group, Inc. Pension Plan on December 31, 1998, and on or after January 1, 1999, which is when the Plan was converted to a cash balance design (the "Class").

26. The requirements for maintaining this action as a class action under Fed. R. Civ. P. 23(a) are satisfied.

27. The proposed Class numbers in the tens of thousands and is so numerous that joinder of all members is impracticable.

28. The claims of Plaintiffs and the Class raise numerous common questions of fact and law. Common issues of fact and law include whether the conversion of the Former Plan into the Cash Balance Plan violates ERISA, and, if so, the nature and extent of relief to which Plaintiffs and the Class are entitled. Further, each Class member's rights wil be determined by resort to the same plan documents and the same provisions of ERISA.

29. Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs' cash balance benefits were calculated in the same manner and using the same formula as all of the members of the Class. Plaintiffs do not assert any claims in addition to or different than those of the Class.

30. Plaintiffs are adequate representatives of the Class. The interests of Plaintiffs are identical to those of the Class. Defendants have no unique defenses against the Plaintiffs that would interfere with their representation of the Class. Plaintiffs have engaged counsel with considerable experience litigating all types of class actions, including ones brought under ERISA.

31. The requirements for maintaining this action as a class action under Fed. R. Civ. P. 23(b)(1) are satisfied in that the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications establishing inconsistent standards of conduct for Defendants, and individual adjudications present a risk of adjudications which, as a practical matter, would be dispositive of the other members who are not parties.

32. Additionally, the requirements for maintaining this action as a class action under Fed. R. Civ. P. 23(b)(2) are satisfied in that the Defendants' actions affected all Class members in the same manner making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

33. Lastly, the requirements for maintaining this action as a class action under Fed. R. Civ. P. 23(b)(3) are satisfied in that a class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. The expense and burden of individual litigation makes it impractical for the members of the Class to pursue individual litigation to vindicate their rights. Common questions of law and fact predominate, and Plaintiffs are unaware of any problems that would militate against maintaining this action as a class action.

## TOLLING OF THE APPLICABLE STATUTES OF LIMITATIONS

34. Any applicable statutes of limitations have been tolled by Defendants' various failures to disclose and misstatements of fact alleged above. Defendants' failed to disclose and misrepresented a number of material facts including: Defendants' failure to properly calculate and value participant accrued benefits when determining cash balance account balances and benefit payout amounts; Defendants' failure to properly notify Plaintiffs and the Class of a

reduction in the rate of benefit accruals under the Cash Balance Plan; and that the Cash Balance Plan generally provides for reductions of benefit accruals based solely on age. Instead, Defendants continually reassured participants that the benefits under the Old Formula and the Cash Balance Formula were comparable and that their accrued benefits were not being reduced. Through such acts of fraudulent concealment, Defendants have successfully concealed from Plaintiffs and the Class the truth about their accrued benefits and rates of accrual. Plaintiffs did not have the ability to reasonably discover the true facts, the truth having been fraudulently and knowingly concealed by Defendants for years.

35.     In the alternative, Defendants are estopped from relying on any statutes of limitations because of their fraudulent concealment detailed above.

36.     Until very recently, Plaintiffs had no knowledge that Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent concealment of the wrongdoing by Defendants, Plaintiffs could not reasonably have discovered the wrongdoing, nor could the Plaintiffs have, as a practical matter, taken legally effective action.

## CLAIMS FOR RELIEF

## COUNT ONE

37.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

38.     In determining each participant's initial account balance under the Cash Balance Formula, Defendants failed to consider, value and include the early retirement benefit provided for under the Old Formula. Further, Defendants have not included the full value of this early retirement subsidy in determining cash balance account balances and payout amounts under the

Plan. While the Old Formula provided an early retirement benefit to those aged 50 and higher using a commensurate benefit commencement date, under the Cash Balance Formula Defendants determined the initial account balance, subsequent account balances, and payout amounts by assuming a benefit commencement date ranging only from age 62 to 65.

39.  Defendants' failure to include the early retirement subsidies provided for under the Old Formula in determining the initial account balances violates ERISA's "anti-backloading" rules and results in what is known as a "wearaway" of accrued benefits. By failing to include the value of these early retirement benefits in determining the value of a participant's accrued benefits under the Cash Balance Formula, Plan participants do not accrue any additional benefits for a number of years. This absence of benefit accruals followed by a resumption of benefit accruals violates the so-called 133 1/3 % test under ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B), which requires that the value of the normal retirement benefit accrued by any participant during any year may not exceed the annual rate of benefit accrual during any previous year by more than 33 and 1/3 %. Following years of zero accrual, any and all benefit accruals during a subsequent year automatically violate this rule.

## COUNT TWO

40.  Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

41.  Defendants' failure to include the early retirement benefit provided for under the Old Formula when determining the value of accrued benefits under the Plan and the amount of benefits paid to Plan participants violates ERISA § 204(g), 29 U.S.C. § 1054(g), to the extent that it has the effect of "eliminating or reducing an early retirement benefit or a retirement-type

11

subsidy."

## COUNT THREE

42. Plaintiffs Register and Wilson incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

43. Plaintiffs Register and Wilson bring this claim on behalf of themselves and all others similarly situated who received a single sum distribution from the Plan after the Date of Conversion.

44. ERISA §§ 204(c)(3), 29 U.S.C. §§ 1054(c)(3), and Internal Revenue Code, 26 U.S.C. §§ 411(a)(7)(A)(i), 411(c)(3), 417(e), as implemented by Treasury Regulations, 26 C.F.R. §§ 1.411(a)-7(a)(1), 1.411(c)-1(e), 1.417(e)-1(d), require any optional form of benefit paid from a defined benefit plan to be no less than the present value of the participant's accrued benefit expressed as an annual benefit commencing at normal retirement age (age 65 under the Plan).

45. Plaintiffs Register and Wilson were fully vested participants in the Plan by the time they terminated their employment and received a single sum distribution from the Plan.

46. In determining the amount of Plaintiffs' lump sum payments, Defendants did not project their hypothetical account balances to age 65 using the Plan's interest crediting rate and then pay a lump sum with the same actuarial present value as the annual benefit that would be available at age 65 based on the projected account balance. Instead, Defendants simply paid Plaintiffs the balance in their hypothetical account. Moreover, Defendants did not even attempt to compute the actuarial present values of the pension benefits participants already had accrued on the Date of Conversion. The actuarial present values of these "protected" benefits under Section 411(d)(6) of the Internal Revenue Code vastly exceeded the account balances of the Plan

participants.

47.     By failing to compute the amount of their projected annual benefit commencing at age 65 and determine the value of the benefits that had accrued to the Date of Conversion, the Defendants failed to provide Plaintiffs with a lump sum distribution in an amount equal to the present value of their accrued benefit as defined under ERISA.

48.     Under the Cash Balance Formula, the Plan paid Plaintiffs Register and Wilson and other members of the Class a lump sum benefit that was less than the present value of their normal retirement benefit in violation of ERISA §§ 204(c)(3), 29 U.S.C. §§ 1054(c)(3), and Internal Revenue Code, 26 U.S.C. §§ 411(a)(7)(A)(i), 411(c)(3), 417(e), as implemented by Treasury Regulations, 26 C.F.R. §§ 1.411(a)-7(a)(1), 1.411(c)-1(e), 1.417(e)-1(d).

## COUNT FOUR

49.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

50.     ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), prohibits an employer from establishing or maintaining plan rules that reduce "the rate of an employee's benefit accrual . . . because of the attainment of any age." ERISA requires that a participant's rate of benefit accrual remain as great as the rate for a younger employee with the same salary.

51.     Due to the effects of compounding interest until retirement, interest credits under a cash balance plan are more substantial for younger participants. Unless earnings credits progressively counter-balance the interest credits, the rate of an employee's benefit accrual will be reduced because of age.

52.     Defendants' Cash Balance Formula increases its earnings credits by 1% at 10

point combined age and service intervals until the participant accumulates 70 points, e.g. age 50 with 20 years of service or age 55 with 15 years of service. After that point, the earnings credit is fixed as a flat percentage of pay.

53. As a result, once a participant has 70 points or more, the rate of benefit accrual actually decreases based on age in violation of ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i).

54. Before a participant has 70 or more combined age and service points, the rate of benefit accrual generally declines because of age, as well, in violation of ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i).

## COUNT FIVE

55. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

56. Defendants have failed to notify Plan participants of the significant reductions in the rate of future accruals (as alleged above) in violation of ERISA § 204(h), 29 U.S.C. § 1054(h), which requires that notice of the reduction be communicated within a reasonable time before the effective date of the plan amendment.

## COUNT SIX

57. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

58. On information and belief, Defendants distributed to participants a Summary Plan Description ("SPD") of the Plan, as amended by the new Cash Balance Formula. The SPD, however, does not disclose that the Cash Balance Formula significantly reduces the rate of future

benefit accruals, and results in a reduction of accrued benefits and benefit accrual based on age.

59.  Defendants' SPD is not therefore "written in a manner calculated to be understood by the average plan participant," and is not "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the Plan," in violation of ERISA § 102, 29 U.S.C. § 1022.

## COUNT SEVEN

60.  Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

61.  Defendants have fiduciary duties to Plan participants and beneficiaries. ERISA § 404, 29 U.S.C. § 1104.

62.  Defendants' fiduciary duties include, without limitation, fairly representing and communicating to Plaintiffs and the Class, with care, skill, prudence, and diligence, the truth about their accrued benefits as a result of the conversion of the Former Plan to the cash balance design.

63.  Defendants' failure to disclose and their deceptive and uninformative disclosures to Plan participants and beneficiaries of the disadvantages of the Cash Balance Formula violate Defendants' fiduciary duties under ERISA § 404, 29 U.S.C. § 1104.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants and that the Court award the following relief:

A.  An Order certifying this action as a class action pursuant to Fed. R. Civ. P. 23;

B.  Judgment for Plaintiffs, the Class, and the Plan against Defendants on all claims

asserted and/or within the ambit of this Complaint;

C.  An Order awarding, declaring or otherwise providing Plaintiffs with all relief available to Plaintiffs, the Class, and the Plan against Defendants under ERISA §§ 502(a)(2) and (a)(3), 29 U.S.C. §§ 1132(a)(2) and (a)(3), including pre and post judgment interest and costs;

D.  An Order awarding reasonable attorneys' fees and reimbursement of expenses incurred in connection with this action; and

E.  Any other relief this Court deems just, proper and appropriate.

## JURY DEMAND

Pursuant to the Seventh Amendment to the United States Constitution, and Fed. R. Civ. P. 38 and 39, Plaintiffs demand a trial by jury with respect to all issues triable by jury.

Dated: December 30, 2004

COUNSEL FOR PLAINTIFFS:

*/s/*

**MILLER FAUCHER and CAFFERTY LLP**
Bryan L. Clobes (PA No. 68151)
Michael S. Tarringer (PA No. 71876)
One Logan Square, Suite 1700
Philadelphia, PA 19103
Phone: 215-864-2800
Fax: 215-864-2810

**FINKELSTEIN THOMPSON & LOUGHRAN**
William P. Butterfield
Hilary K. Ratway
The Duvall Foundry
1050 30th Street, N.W.
Washington, D.C., 20007
Phone: 202-337-8000
Fax: 202-337-8090

**WEINSTEIN KITCHENOFF SCARLATO
 KARON & GOLDMAN LTD.**
David H. Weinstein
Paul J. Scarlato
Andrea L. Adlam
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Phone: 215-545-7200
Fax: 215-545-6535

**JOHN F. INNELLI, LLC**
John F. Innelli
1818 Market Street, Suite 3620
Philadelphia, PA 19103
Phone: 215-561-1011
Fax: 215-561-0012