IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANDRA REGISTER, et al., Plaintiffs, | : | CIVIL ACTION |
| v. | : | |
| PNC FINANCIAL SERVICES GROUP, INC., et al., Defendants. | : | NO. 04-CV-6097 |

MEMORANDUM

LEGROME D. DAVIS, J. NOVEMBER 21, 2005

Presently before this Court is Defendants' Motion to Dismiss the Amended Complaint (Doc. No. 22) and Plaintiffs' response thereto (Doc. No. 28). For the reasons that follow, Defendants' Motion to Dismiss is granted.

I. FACTUAL BACKGROUND

On December 30, 2004, Plaintiffs filed suit against Defendants PNC Financial Services Group, Inc. ("PNC"), PNC Bank, N.A., Pension Committee of PNC Financial Services Group, Inc. Pension Plan and PNC Financial Services Group, Inc. Pension Plan (together "Defendants") for alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Plaintiffs bring this action on behalf of current and former PNC employee-participants in and beneficiaries of the PNC Financial Services Group, Inc. Pension Plan. This case arises from PNC's conversion of its employee pension plan from a traditional defined benefit plan to a cash balance plan.

A. Background on Cash Balance Plans

Cash balance plans have existed for twenty years; however, it was not until the last few

years that cash balance plans became widely adopted. This movement from traditional defined benefit plans to cash balance plans reflects the changing labor market. From an employee's perspective, cash balance plans are better suited to increased job-mobility and contemporary labor markets because they accrue evenly over an employee's career, allow greater portability, and are easier to understand because they resemble 401ks. See Esden v. Bank of Boston, 229 F.3d 154, 158 n.5 (2d Cir. 2000). From an employer's perspective, cash balance plans are more advantageous because employees have a greater appreciation for the value of their pension benefit under a cash balance plan. Id. In addition, the employer retains the funding/tax benefits associated with a defined benefit plan. Id. Cash balance plans on their own are not terribly controversial. See Campbell v. Bank Boston, N.A., 327 F.3d 1, 8 (1st Cir. 2003). However, the transition from traditional defined benefit plans to cash balance plans has sparked a series of lawsuits.

While there is no doubt that a cash balance plan is a defined benefit plan under ERISA, there are key differences between a cash balance plan and a traditional defined benefit plan. See Esden v. Bank of Boston, 229 F.3d 154, 158 (2d Cir. 2000) ("notwithstanding that cash balance plans are designed to imitate some of the features of defined contribution plans, they are nonetheless defined benefit plans under ERISA"). The two factors that affect the accrual of a traditional pension benefit are the years of service and the amount of pay, whereas the factors that affect the accrual of a cash balance plan benefit are the years of service, the amount of pay, the number of years a participant has until normal retirement date and the interest rate. The way in which the benefits are expressed also differs; the traditional defined benefit plan is typically expressed as an annual annuity payable at normal retirement date, whereas the benefit in a cash

balance plan is typically expressed as a lump sum value.

B. PNC's Pension Plan Conversion

Prior to January 1, 1999, PNC's pension plan was a final average pay plan, i.e. a traditional defined benefit plan. Under this plan, the normal retirement benefit was calculated by multiplying a fixed percentage with the participant's years of service and the participant's final average pay.[1] Defs' Mot. to Dismiss at Ex. B, PNC Bank Corp. Amended and Restated Pension Plan ¶ 4.1 [hereinafter Prior Plan]. The normal retirement benefit was expressed in terms of an annual annuity that was payable when the participant turned sixty-five. If a participant retired before his normal retirement date, the participant was potentially eligible to receive a subsidized early retirement benefit.[2] Id. ¶ 4.2. The participant had the option to receive his benefit as a lump sum amount, the actuarial equivalent of the annual benefit. Id. ¶ 5.2.

On January 1, 1999, PNC replaced its traditional defined benefit plan with a cash balance plan. Under the new cash balance formula, benefits that had accrued under the prior plan were restated in the form of opening hypothetical cash balance accounts. Defs' Mot. to Dismiss at Ex. A, PNC Bank Corp. Amended and Restated Pension Plan ¶ 4.2 [hereinafter Cash Balance Plan].

---

[1] The calculation involved different fixed percentages for service up to and including 25 years (1.3%) and service in excess of 25 years (1.0%). Defs' Mot. to Dismiss at Ex. B, PNC Bank Corp. Amended and Restated Pension Plan ¶ 4.1. If a participant's final average compensation was in excess of the covered compensation, the benefit also included an amount equal to a fixed percentage (0.45%) multiplied by the amount the final average compensation exceeded the covered compensation and by the credited service up to and including 35 years of service. Id.

[2] Normal retirement date was defined as the participant's sixty-fifth birthday. Id. ¶ 1.29. The participant's benefit was fully subsidized if the participant retired at age 62 or older. Id. ¶ 4.2. A participant's benefit was partially subsidized if the participant retired between the ages of 50 and 62. Id.

Each participant's hypothetical account is credited annually with an earnings credit, which is a percentage of pay ranging from 3% to 8%.[3] Id. ¶ 4.2. The earnings credit percentage is based on the sum of the participant's age and years of service.[4] Id. Interest credits based upon the 30-year Treasury rate are credited quarterly to the participant's account. Id. ¶ 4.5. At the participant's normal retirement date, the account is actuarially converted into an annual annuity. Id. ¶ 4.6.

## II. LEGAL STANDARD

Dismissal for failure to state a claim is appropriate when it clearly appears that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Robb v. City of Philadelphia, 733 F.2d 286. 290 (3d Cir. 1984). A court may consider any document appended to and referenced in the complaint on which plaintiff's claim is predicated. See Fed. R. Civ. P. 10(c); In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997); In re Westinghouse Securities Litigation, 90 F.3d 696, 707 (3d Cir. 1996). A claim may be dismissed when the facts alleged and the reasonable inferences therefrom are legally insufficient to support the relief sought. See Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc., 836 F.2d 173, 179-80 (3d Cir. 1988).

## III. DISCUSSION

Plaintiffs allege that (1) the plan change violates ERISA because it results in the absence of benefit accruals for a number of years for some participants in violation of ERISA §

---

[3] An account may also be credited with transitional earnings credits. Id. ¶ 4.4.

[4] If the sum of a participant's age and service is less than 40, he receives 3% of pay; if it is between 40 and 49 he receives 4% of pay; if it is between 50 and 59, he receives 5% of pay; if it is between 60 and 69, he receives 6% of pay; if it is 70 or more, he receives 8% of pay. Cash Balance Plan ¶ 4.3.

204(b)(1)(B); (2) an employee's benefit accrual decreases on account of the employee's age in violation of ERISA § 204(b)(1)(H); (3) the plan change notification did not comply with ERISA § 204(h); (4) the Summary Plan Description violates ERISA § 102; and (5) Defendants did not meet their fiduciary duties under ERISA § 404. Defendants have moved to dismiss on all counts.

A. ERISA § 204(b)(1)(B)[5]

Plaintiffs allege that because of the way the initial account balances under the cash balance plan were calculated, the benefits for some participants will not increase for a number of years in violation of ERISA § 204(b)(1)(B). Compl. ¶ 46. See 29 U.S.C. § 1054(b)(1). Plaintiffs believe this stagnation of some participants' benefits results from the failure to include the prior plan's early retirement subsidies in the calculation of the initial account balance under the new plan. Compl. ¶ 46. This statement of the issue actually confounds two issues: (1) whether the new pension plan survives the required anti-backloading test under ERISA § 204(b)(1) and (2) whether early retirement factors need to be factored into the initial account balances under the Cash Balance Plan. Each issue will be addressed in turn.

1. The Anti-Backloading Test

A pension plan must pass one of the three anti-backloading tests set forth in ERISA. 29 U.S.C. § 1054(a)(1), (b)(1). The anti-backloading tests prevent an employer from allowing minimal accrual of benefits in the initial years of employment to be followed by large benefit accruals as an employee nears retirement. See Hoover v. Cumberland, Md. Area Teamsters

---

[5] This count is brought on behalf of Plaintiffs Beckman, Rhoades and Daggett and on behalf of the subclass of current and former employee-participants in and beneficiaries of the Plan as of December 31, 1998 who were or would have been eligible for an early retirement subsidy under the prior plan. Pls' Opp. at 9 n6.

Pension Fund, 765 F.2d 977, 982 n.10 (3d Cir. 1985). Two of the anti-backloading tests do not apply to benefits calculated using a career pay history. 29 U.S.C. § 1054(b)(1)(A), (C). Since a cash balance plan is calculated using a career pay history, only one of the three tests is applicable.[6] Therefore, the plan must satisfy the 133-1/3% test. See id. § 1054(b)(1)(B). A plan will fail this test if the value of the benefit an employee accrues in any one year is 33-1/3% greater than the value of the benefit accrued in any prior year of employment. Id.

When a company changes its pension plan, ERISA protects benefits previously earned under the prior plan provisions. 29 U.S.C. § 1054(g)(1). At no point can the participant receive less than his accrued benefit at the time the plan was changed.[7] Id. In order to comply with this provision of ERISA, the new PNC plan provides that a participant receives the greater of his cash balance benefit and his frozen accrued benefit, including any applicable early retirement subsidies, under the prior plan. See Cash Balance Plan ¶ 1.2. For some participants, the frozen prior plan benefit may be greater than the benefit under the new plan for a few years. When this occurs, the participant's benefit will not accrue any additional value.

Plaintiffs claim that since some employees' benefits will not increase for a few years after the plan change, it is inevitable that the plan will fail the 133-1/3% test, as no accrual followed by the resumption of accruals will inevitably be more than a third higher. Compl. ¶ 46. While it is certainly true that the resumption of accruals after a time of no accrual will result in a change in accrual rate that is higher than one third, the 133-1/3% test has provisions that address a

---

[6] In a cash balance plan, a pay credit is added to the cash balance account for each year of earnings. Therefore, it follows that a career pay history is used to calculate the benefit.

[7] The accrued benefit at the time of the plan change is typically "frozen."

situation such as this one, where the period of no accrual results from a plan amendment. See 29 U.S.C. § 1054(b)(1)(B)(I). The test states that "any amendment to the plan which is in effect for the current year shall be treated as in effect for all other plan years." Id. Once a plan amendment occurs, only the new plan is taken into consideration when performing the test. Since the protected prior benefits under the old plan are disregarded, no wearaway of the benefit occurs.[8] Plaintiffs do not allege that the cash balance plan, when viewed by itself, violates the 133-1/3% test. Therefore, Plaintiffs have failed to state a claim for relief.

2. Early Retirement Factors

Plaintiffs contend that the pre-plan amendment early retirement subsidies should have been applied to the calculation of the lump sum value of the accrued benefit. Compl.¶ 46. Employers "are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate" pension plans. Curtis-Wright Corp v. Schoonejongen, 514 U.S. 73, 78 (1995); Lockheed Corp v. Spink, 517 U.S. 882, 890-91 (1996). PNC's new pension plan provides that the initial account balance will be set equal to "an amount which is the lump sum value of [the employee's] Accrued Benefit, determined under the provisions of the Prior Plan." Cash Balance Plan ¶ 4.2. Accrued Benefit, as defined under the prior plan, is the benefit payable at normal retirement date.[9] Prior Plan ¶¶ 1.1, 1.38. Since the Accrued Benefit is payable at age 65, no early

---

[8] A recent district court case held that "because plaintiffs' anti-backloading claim attempts to compare the unamended benefit formulas with the amended benefit formulas, plaintiffs fail to state a claim for relief." Allen v. Honeywell Retirement Earnings Plan, 382 F. Supp. 2d 1139, 1160 (D. Ariz 2005).

[9] Normal Retirement Date is defined as the employee's sixty-fifth birthday. Id. ¶ 1.29.

retirement subsidies apply.[10] The ability to amend the plan lies with the employer. The employer was free to define the initial account balance under the new plan as it did, i.e. to exclude the value of any early retirement subsidies when calculating the initial account balance. As long as the value of the early retirement subsidy is preserved as it is applied to the benefit accrued under the old plan, there is no violation of ERISA. See 29 U.S.C. § 1054(g).

Plaintiffs have failed to state a claim for relief under ERISA § 204(b)(1)(B). As a result, this count is dismissed.

B. ERISA § 204(b)(1)(H)

A pension plan violates ERISA's age discrimination provision if, under the plan, "the employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age." 29 U.S.C. § 1054(b)(1)(H). Whether or not a cash balance plan violates this age discrimination provision turns on statutory interpretation. The issue is whether "the rate of an employee's benefit accrual" for a cash balance plan refers to the change in the benefit payable in the form of an annuity that commences at age 65 or to the annual amount credited to the employee's cash balance account.

Under ERISA, an "Accrued Benefit" is defined as "the individual's accrued benefit determined under the plan ... expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002. A number of courts have held that future cash balance interest credits are part of the accrued benefit. See Berger v. Xerox, 338 F.3d 755 (7th Cir. 2003); Esden v. Bank Boston, 229 F.3d 154 (2d Cir. 2000); Lyons v. Georgia-Pacific Corp. Salaried

[10] Under the prior plan, early retirement subsidies applied to those retiring between age 50 and age 64. Prior Plan ¶ 4.2.

Employees Retirement Plan, 221 F.3d 1235 (11th Cir. 2000). In other words, in calculating a participant's accrued benefit, the cash balance account value was projected with interest to age 65, the normal retirement date, and then actuarially converted into an annual benefit commencing at age 65. Although the interest had not yet been "credited" to the cash balance account, the plan provided that it would be in the future, so the future interest credits were determined to be part of the accrued benefit. Plaintiffs argue that it follows that the rate of benefit accrual for §411(b)(1)(H) purposes includes all future interest credits. Pls' Opp. at 12-13.

Under a cash balance plan, an amount of money credited to a younger individual will have more time to accrue interest and will result in a larger annuity upon retirement than the same amount credited to an employee closer to retirement age.[11] An amount contributed to a younger employee is worth more (when expressed as an annuity starting at age 65) than the same amount contributed to an older employee, because the younger employee has more time to accrue interest before normal retirement age. Plaintiffs correctly note that interest credits attributed to a certain earnings credit are more substantial for younger participants. Pls' Opp. at 15. As a result, Plaintiffs allege that the "rate of benefit accrual" decreases for all participants based on age in violation of ERISA § 204(b)(1)(H).[12] Whether or not this is true turns on whether the "rate of

---

[11] This is as true for someone age 25 versus age 30 as it is for someone age 45 versus age 50.

[12] Plaintiffs note that the rate of benefit accrual decreases more dramatically when the sum of participant's age and service is greater than 70. While this is true, this is because the plan provides increasing pay credits based on the sum of participant's age and service. After the sum of participant's age and service reaches 70, the pay credits (which start at 3%) are held constant at 8% of pay. Plaintiffs, misunderstanding the effects of this increasing pay credit percentage, allege that workers who starts at an older ages "lose the benefits of the increasing earnings credit after a shorter time of service." While this is true, the workers who start at older ages receive the benefit of higher pay credits from the time they start work. By way of illustration: a worker who

benefit accrual" is measured in terms of the change in the benefit payable in the form of an annuity at age 65.

1. Previous Decisions that Address Whether Cash Balance Plans Violate ERISA Age Discrimination Provisions

The Southern District of Indiana, the first court to address this issue, found that there were two reasons the cash balance design did not violate the ERISA age discrimination provisions. Eaton v. Onan Corp., 117 F. Supp. 2d 812 (S.D. Ind. 2000). First, the court found that the ERISA age discrimination provisions did not apply to employees who have not yet reached normal retirement age. Id. at 815. After finding that the statute did not unambiguously require that the rate of benefit accrual be measured in terms of an annuity payable at normal retirement age, the court reviewed the legislative history, the broader purposes of the legislation and the practical implications of its decision. Id. at 825-34. The court found that statutory headings in the text of the original enactment and in the IRC's parallel discrimination provision refer to the accrual of benefits beyond normal retirement age, id. at 826, and that the legislative history confirms that the age discrimination provisions were enacted to protect employees after normal retirement age. Id. at 827-29.

Second, the court found that even if the pension age discrimination provisions apply to all participants, when "their language is properly applied to cash balance plans, the undisputed facts show that the rate of benefit accrual does not depend on age." Id. at 816. After recognizing that

---

starts at age 30 has 3% of his pay credited to his cash balance account, while a worker who starts at age 50 has 5% of his pay credited. Even if they are making the same amount, the older worker has more pay credited.

the "rules for defined benefit plans simply were not developed to address the features of cash balance plans," the court held that the concept of the benefit accrual rate did not have a single, self-evident meaning. Id. at 818, 830. After considering the practical effects of alternative interpretations, the court found that, for cash balance plans, the accrual rate should be "the change in the employee's cash balance account from one year to the next," not the change in the accrued benefit. Id. at 832-33.[13]

After Eaton, the First Circuit noted that the answer to whether or not a cash balance plan violated ERISA's age discrimination provision depends on "an interpretation of the complex ERISA statutory scheme." Campbell v. Bank Boston, 327 F.3d 1, 9 (1st Cir. 2003). While declining to "resolve this complicated issue," the court noted that the ERISA age discrimination provision may not even apply to employees younger than the age of normal retirement. Id. at 10 (citing Eaton and stating that the legislative history "buttresses this argument"). The court also noted that it was "by no means clear" that the rate of accrual needs to be defined in terms of an annuity payable at normal retirement date. Id.

Without citing either case that had addressed the issue, the Southern District of Illinois found that a cash balance plan violated ERISA's age discrimination provision. Cooper v. IBM Personal Pension Plan, 274 F. Supp. 2d 1010 (S.D.Ill. 2003). The court held that Congress did not intend the term "benefit accrual" to mean something different from "accrued benefit." Id. at 1022. "The syntax differs ever so slightly so as to comport with the requirements of good English

[13] The court noted that if it adopted plaintiff's interpretation of the rate of benefit accrual, "it is likely that hundreds of cash balance plans with millions of participants will be deemed illegal." Id. at 823.

usage, but the concept is the same." Id. The court held that the rate of accrual should be measured in terms of an annuity payable at normal retirement age. In terms of an age 65 annuity, the interest credits are always more valuable for a younger employee than an older employee. Id. at 1021. Therefore, the court found that a cash balance plan violated the "literal and unambiguous provisions" of ERISA § 204(b)(1)(H). Id. at 1022.

Recently, the District of Maryland compared Cooper with Eaton and Campbell. Tootle v. ARINC, Inc., 222 F.R.D. 88, 93 (D. Md. 2004). Struggling with the inevitable result of Cooper, that all cash balance plans violate the ERISA age discrimination provision by virtue of their design, the court refused to find all cash balance plans per se discriminatory. Id. The court agreed with the reasoning in Eaton, finding that the legislative history and the statutory language provided strong evidence that the age discrimination provision was not intended to protect workers until after they attained normal retirement age. Id. In addition, the court held that the rate of benefit accrual should be that defined in Eaton or that included in the ERISA provisions for defined contribution plans. Id. at 94.

2. Analysis

This issue turns on what is meant by the "rate of an employee's benefit accrual" in ERISA § 204(b)(1)(H). This Court agrees with the Eaton court's secondary analysis of this issue. ERISA does not define the "rate of an employee's benefit accrual" for purposes of applying the ERISA age discrimination provisions. Eaton, 117 F. Supp. 2d at 825. See also Pls' Opp. at 14 ("the term 'benefit accrual' is not explicitly defined in the statute"). Plaintiffs contend that the "rate of an employee's benefit accrual" must be based upon the change in value of the

employee's annuity at normal retirement age.[14] Pls' Opp. at 12-18. This conclusion assumes that the accrued benefit, which is the participant's benefit at normal retirement date, is the benefit referred to in "rate of an employee's benefit accrual." However, this phrase does not require that the rate be measured solely in terms of an annuity payable at normal retirement age. Eaton, 117 F. Supp. 2d at 825.

The concept of the benefit accrual rate does not have a single self-evident meaning.[15] Id. at 830. Cash balance plans accrue benefits differently than traditional defined benefit plans. Under a traditional defined benefit plan, the benefits are defined in terms of the age 65 annuity. Therefore, it follows logically that the rate of benefit accrual is the change in the accrued benefit. Cash balance plans are not defined in terms of an age 65 annuity, rather they are defined in terms of an account balance that grows with pay credits and interest. Therefore, it follows logically that the rate of benefit accrual is determined by the change in the account balance.

This view is buttressed by the Conference Report on OBRA 1986, the ERISA amendment that established § 204(h)(1)(H), and statements by the Department of Treasury, one of the agencies charged with administering ERISA. The Conference Report on OBRA 1986, in discussing benefit accruals under the provision, states that "[p]resent law specifies certain requirements with respect to the rate at which benefits are accrued (i.e., earned) under a pension plan." H.R. Conf. Rep. No. 99-1012, at 375 (1986). The word "accrued" in this context means

---

[14] Plaintiff addresses the Eaton decision by arguing that Eaton was based on an incorrect premise, i.e. that there are conflicting definitions of accrued benefit. Pls' Opp. at 17. However, in Eaton, the court found that there were different possible definitions for the "rate of employee's benefit accrual," not for accrued benefit. Eaton, 117 F. Supp. 2d at 825.

[15] This is complicated by the fact that the "rules for defined benefit plans simply were not developed to address the features of cash balance plans." Eaton, 117 F. Supp. 2d at 818.

earned," it does not refer to the "accrued benefit."

Rulings, interpretations and opinions of administrative agencies "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."[16] Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944). Informal agency interpretations are not binding but are entitled to respect under Skidmore deference to the extent they are persuasive. George Harms Construction Co., Inc v. Chao, 371 F.3d 156, 161 (3d Cir. 2004) (citing Madison v. Resources for Human Development, Inc., 233 F.3d 175, 186 (3d Cir. 2000)). An agency interpretation may merit some deference whatever its form. Santiago v. GMAC Mortgage Group, Inc., 417 F.3d 384, 389 n.4 (3d Cir. 2005) (quoting United States v. Mead Corp., 533 U.S. 218, 234 (2001)).

The Department of Treasury has consistently stated that cash balance plans are not age discriminatory. The proposed 2002 Treasury Department regulations stated that cash balance plans are not inherently age discriminatory. Prop. Treas. Reg. § 1.411, 67 Fed. Reg. 76,123 (Dec. 11, 2002).[17] In its Revenue Proposals for 2005 and 2006, the Department of Treasury, after noting the disagreement between the Cooper and Eaton courts, stated that "cash balance plans and cash balance conversions are not inherently age-discriminatory." Department of Treasury, General Explanations of the Administration's Fiscal Year 2006 Revenue Proposals 82 (2005); Department of Treasury, General Explanations of the Administration's Fiscal Year 2005

---

[16] The factors to be considered when determining the weight to be given to the administrative agency's interpretation include "the thoroughness evident in its consideration, the validity of its reasoning, and its consistency with earlier and later pronouncements." Skidmore, 323 U.S. at 140.

[17] The proposed regulations emphatically reject the first holding in Eaton, that the age discrimination provisions only apply after normal retirement age.

Revenue Proposals 104 (2004). The preamble to the Department of Treasury's regulations under IRC § 401(a)(4) stated that the "fact that interest adjustments through normal retirement age are accrued in the year of the hypothetical allocation will not cause a cash balance plan to fail to satisfy the requirements of §411(b)(1)(H)." 56 Fed. Reg. 47,524, 47,528 (Sept. 19, 1991).

The proposed Treasury regulations provided that the rate of benefit accrual under a cash balance plan is additions to the cash balance account for the year. Prop. Treas. Reg. § 1.411, 67 Fed. Reg. 76,123 (Dec. 11, 2002). After considering the practical effects of alternative interpretations, the Eaton court found that, for cash balance plans, the accrual rate should be "the change in the employee's cash balance account from one year to the next." Eaton, 117 F. Supp. 2d at 832-33.[18] This Court cannot find any reason that § 204(h)(1)(H) should be construed otherwise. Since this Court finds that "rate of an employee's benefit accrual" does not necessarily refer to the accrued benefit at age 65, PNC's cash balance plan is not age discriminatory. Therefore, Plaintiffs have failed to state a claim for relief.

C. ERISA § 204(h)

Plaintiffs contend that the cash balance conversion "significantly reduced the rate of future pension plan benefit accruals for each plan participant" and that Defendants, although they were aware of this, did not inform Plaintiffs of these reductions. Compl. ¶ 65. In the ERISA §204(h) notice, which is incorporated through reference into the Motion to Dismiss, Defendants summarized the new cash balance plan and stated that the plan change "may affect" and "in some

---

[18] The court noted that if it adopted plaintiff's interpretation of the rate of benefit accrual, "it is likely that hundreds of cash balance plans with millions of participants will be deemed illegal." Id. at 823.

instances reduce" the rate of future benefit accruals. Defs' Mot. to Dismiss at Ex. C, Section 204(h) Notice. At issue is whether these disclosures by Defendants satisfied the requirements of ERISA § 204(h) or whether more was required.

At the time of the plan amendment, ERISA § 204(h) provided that a plan "may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date."[19] 29 U.S.C. § 1054(h)(1) (1998). A summary of the amendment meets these requirements "if the summary is written in a manner calculated to be understood by the average plan participant and contains the effective date." Treas. Reg. 1.411(d)-6, Q & A (10) (1998).[20] "The summary need not explain how the individual benefit of each participant or alternate payee will be affected by the amendment." Id.

The Section 204(h) notice provided by PNC comprehensively summarizes the new cash balance plan and is written in a way that can be "understood by the average plan participant." See Defs' Mot. to Dismiss at Ex. C, Section 204(h) Notice at 1-13, 16-20. The notice describes how the initial account balance will be calculated and how benefits will accrue in the future. Id. at 7-10. The notice also explains that the interest accrual will be greater for younger employees since more time passes before they reach retirement. Id. at 8. The Treasury Regulations make it clear that all that is required in the § 204(h) notice is the effective date and an understandable summary

---

[19] ERISA §204(h) has since been amended to require that the notice is sufficient to enable participants to understand the effect of the amendment. 29 U.S.C. §1054(h)(2), as amended by Pub. L. No. 107-16 §659(b), effective Jan. 1, 2002.

[20] This regulation has also since been amended.

of the plan amendment, both of which Defendants provided. See id. at 1-13, 16-20; Treas. Reg. 1.411(d)-6, Q & A (10) (1998). Defendants did not notify participants that their benefit accrual rates would be "significantly reduced" in the future, but, quite simply, they did not need to. As a result, this claim is dismissed.[21]

D. ERISA § 102

Plaintiffs allege that the Summary Plan Description ("SPD") "fails to disclose the Cash Balance Formula's failure to include the protected early retirement subsidy" and fails to disclose "that plan participants' rate of future benefit accruals was being reduced as a function of getting older." Compl. ¶ 67. The SPD requirements are addressed by Section 102 of ERISA, 29 U.S.C. § 1022, and a Department of Labor regulation, 29 C.F.R. § 2520.102-2(a), (b). Defendants rely on ERISA § 102.[22] Plaintiffs believe they are quoting ERISA § 102, but instead rely on 29 C.F.R.

[21] Plaintiffs cite four cases for their proposition that the notice in this case was insufficient. Pl.'s Opp. at 36-37. These cases are easily distinguishable: Abels v. Titan Intern., Inc., 85 F. Supp. 2d 924 (S.D. Iowa 2000) (finding notice to be insufficient when participants were not notified of the plan amendment); DiCioccio v. Duquesne Light Co., 911 F. Supp. 880 (W.D. Pa. 1995) (finding insufficient notice when notice occurred on the day of the amendment not 15 days before); Koenig v. Int'l Life Corp., 880 F. Supp. 372 (E.D. Pa. 1995) (finding insufficient notice when participants were never notified of the plan's amendment); Pickering v. USX Corp., 809 F. Supp. 1501 (D. Utah 1992) (finding that notifying the union was insufficient and that individual participants needed to receive notice).

[22] ERISA § 102 provides that "the summary plan description ... shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 1024(b)."

§ 2520.102-2(a), (b).[23]

The first issue is whether Defendants' failure to disclose the fact that the Cash Balance Formula does not include the protected early retirement subsidy violates ERISA § 102. The SPD does not contain any reference to early retirement subsidies; however, this makes sense because the cash balance plan does not have any early retirement subsidies. Because an early retirement subsidy was not mentioned in the SPD, the average plan participant should understand that the early retirement subsidy was no longer a part of the plan. The SPD does not "fail to inform," rather it correctly describes the provisions of the new plan, as required by ERISA § 102.[24]

The second issue is whether Defendants' failure to disclose "that plan participants' rate of future benefit accruals was being reduced as a function of getting older" violates ERISA § 102. Plaintiffs claim that since this was not disclosed, the SPD was not "written in a manner calculated to be understood by the average plan participant," nor "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." Compl. ¶ 68. The SPD provides a comprehensive description of the cash balance plan. See Defs' Mot. to Dismiss at Ex. D, Summary Plan Description ¶ 6.00-6.21. While the SPD does not state that the benefit accrual is reduced as a function of getting older, it

---

[23] 29 C.F.R. § 2520.102-2(a) provides that the "format of the summary plan description must not have the effect of misleading, misinforming or failing to inform participants and beneficiaries. Any description of exception, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant.... The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations."

[24] It should be noted that this is really an issue about the plan modification, an issue which is addressed by 29 U.S.C. § 1024(b), which requires that participants are given a summary description of the modification or change. Since the summary description was provided, this statute has not been violated.

accurately outlines how the benefit accrual works. Id. ¶ 6.03-6.07. ERISA § 102 does not require that the SPD describe how the benefit accrual rates change as participants age.

In their response to Defendants' Motion to Dismiss, Plaintiffs imply that the SPD does not comply with 29 C.F.R. § 2520.102-2(a), (b). Pls' Opp. at 38-39. Plaintiffs focus on the language stating that any description of a reduction of plan benefits shall not be minimized. However, this language refers to a reduction in the current plan benefits, not to the reduction of future benefits resulting from a plan amendment. See Layaou v. Xerox Corp., 238 F.3d 205, (2d Cir. 2001) (finding that company's failure to provide notice in the SPD that a participant's benefit would be offset by an appreciated amount of his prior distributions violated § 102).

Plaintiffs have failed to state a claim for relief under ERISA § 102. As a result, this count is dismissed.

E. Fiduciary Duties Under ERISA § 404

Plaintiffs allege that Defendants breached their fiduciary duty under ERISA § 404 by making misrepresentations and by failing to disclose the significant reduction in the rate of future benefit accruals, protected benefits and benefit accruals with age. Compl. ¶ 72. Defendants allege that the statements provided in the 204(h) notice and in the SPD comprehensively describe the new plan and fully comply with the applicable statutes. Defs' Mot. to Dismiss at 38-41. Defendants also allege that no untrue statements have been made and that Plaintiffs have not properly pled all of the elements for breach of fiduciary duty. Id. at 42-43.

To state a claim for breach of fiduciary duty for misrepresentations, a plaintiff must establish: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and

(4) detrimental reliance by the plaintiff on the misrepresentation. Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. & Research Found., 334 F.3d 365, 384 (3d Cir. 2003) (citing Daniels v. Thomas & Betts Corp., 263 F.3d 66, 73 (3d Cir. 2001)). Assuming, under the deferential motion to dismiss standard, that misrepresentations, or at least omissions were made by Defendants, Plaintiffs have not pled anything that could be construed as detrimental reliance in their Complaint. Therefore, this claim is dismissed for failure to state a claim.[25]

IV. CONCLUSION

Accordingly, this Court grants Defendants' Motion to Dismiss. An appropriate order follows. _____

[25] Plaintiffs' failure to allege specific misrepresentations or detrimental reliance was raised by Defendants in their first Motion to Dismiss, after which Plaintiffs filed the current (first amended) complaint. Plaintiffs had the opportunity to rectify this once and did not. The Third Circuit has allowed a plaintiff to amend his complaint where plaintiff's counsel represented that the plaintiff could (and would) plead detrimental reliance in a breach of fiduciary duty claim if allowed to amend. Burstein, 334 F.3d at 389. Plaintiffs claim that they "could amend the complaint if this Court deems it necessary." Pls' Opp. at 41.